UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 9:25-CV-81406

| | |
|---|---|
| REBEL A. COLE,<br><br>        *Plaintiff*,<br><br>v.<br><br>ADAM HASNER, individually and in his official capacity as President of Florida Atlantic University; RUSS IVY, individually and in his official capacity as Interim Provost of Florida Atlantic University; STEPHEN ENGLE, individually and in his official capacity as Associate Provost, Academic Personnel of Florida Atlantic University; ANITA PENNATHUR, individually and in her official capacity as Chair of the Department of Finance of Florida Atlantic University; DONALD NEUBAUM, individually; and CHEE OSTINELLI, individually,<br><br>        *Defendants*. | **VERIFIED COMPLAINT**<br><br>Demand for Jury Trial |

## INTRODUCTION

This case arises from Defendants' retaliatory actions against Plaintiff Dr. Rebel A. Cole because he chose to confront people on social media who celebrated the murder of Turning Point USA founder Charlie Kirk while also calling for further political violence. Dr. Cole was removed from his classes (who were assigned to other faculty), stripped of his PhD students (who were assigned to other faculty), barred from campus and university-sponsored events, and publicly maligned for exercising his First Amendment right to

engage with non-university personnel on social media over the assassination of Mr. Kirk. Dr. Cole suffered these harms not because he expressed a message that threatened anyone or disrupted the learning environment on campus, but because Defendants—all of which are state actors—disagreed with the message he conveyed in his speech. The Constitution forbids such blatant viewpoint discrimination, and Dr. Cole sues to make himself whole after his First Amendment rights were violated.

## JURISDICTION AND VENUE

1. This case arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983. Accordingly, this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

2. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over all other claims so related to the First Amendment claim with original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution.

3. Venue is appropriate in this District under 28 U.S.C. § 1391 because the defendants are residents of Florida and a substantial part of the events giving rise to the claim occurred in this district.

## PARTIES

4. Plaintiff Dr. Rebel A. Cole is a tenured faculty and Lynn Eminent Scholar Chaired Professor of Finance at Florida Atlantic University (FAU), a public university in Boca Raton, Florida. He has been employed as a Chaired Professor of Finance (the highest level of faculty employment) at FAU since August of 2016. Dr. Cole lives in Delray Beach,

Florida. FAU is a public (state) university located in Boca Raton, Palm Beach County, Florida.

5. Defendant Adam Hasner is President of FAU and was consulted or approved the decision to suspend Dr. Cole due to his speech on X. He is sued in his official and individual capacities.

6. Defendant Russ Ivey is the Interim Provost at FAU. He is directly responsible for the suspension of Dr. Cole, removing him from his classes and barring him from campus. He is sued in his official and individual capacities.

7. Defendant Stephen Engle is the Associate Provost, Academic Personnel at FAU. Dr. Engle participated in and approved the suspension of Dr. Cole, removing him from his classes and barring him from campus. He is sued in his official and individual capacities.

8. Defendant Anita Pennathur is Chair of Department of Finance. Dr. Pennathur sent a letter via email on September 15, 2025, informing Dr. Cole that FAU was placing him on administrative leave with pay pending an investigation of his recent social media posts. Further, on November 10, 2025, Dr. Pennathur sent Dr. Cole another email warning him that he was not permitted on campus or to attend a conference scheduled for November 13-14, 2025, that he founded and organized in 2024 and was organizing in 2025. Dr. Pennathur is sued in her official and individual capacities.

9. Defendant Donald Neubaum is Associate Dean for Faculty and Administration at FAU. Dr. Neubaum was consulted and concurred with the suspension and other actions taken against Dr. Cole. Dr. Neubaum is sued in his individual capacity.

10. Defendant Chee Ostinelli is Assistant Vice President, Human Resources for FAU. Ms. Ostinelli was involved in the decision to suspend Dr. Cole and to take other actions against him due to his personal speech on social media. Ms. Ostinelli is sued in her individual capacity.

## FACTUAL ALLEGATIONS

11. Dr. Cole began his tenure with FAU in August 2016, after being recruited by the FAU College of Business from his previous position as Full Professor of Finance at DePaul University in Chicago. He has taught graduate (MBA and doctoral level) courses in finance since August 2016, primarily in the premier Executive Education curriculum of the College.

12. Dr. Cole was promoted to the Lynn Eminent Scholar Chaired Professor of Finance in Florida Atlantic University's (FAU) College of Business in January 2019, after serving at the Kaye Chaired Professor of Finance from 2016 – 2018. There are only five "Eminent Scholar" positions among the entire 1,200+ faculty at FAU.

13. Dr. Cole maintains personal social media accounts, including on X, that do not reference his position with FAU. Dr. Cole uses these accounts to engage in public discussion on matters of public concern.

14. On X, Dr. Cole posts under the handle @RebelACole.

15. On September 10, 2025, Charlie Kirk was murdered with a single shot through the neck during a conversation with college students at Utah Valley University in Orem, Utah.

16. In the days after the assassination, many people posted comments regarding Kirk's killing on social media. Some expressed outrage and others sadness at the loss of a rising Christian and conservative voice.

17. Still others openly celebrated Kirk's murder, including one post with a video of people chanting "We got Charlie in the neck, in the neck. We got Charlie in the neck, in the neck." In this video, others were clapping and cheering.

18. An account called @WallStreetApes posted that video and asked what should happen to the people in the video. That post is reproduced below.



19. The responses to the question posed by @WallStreetApes varied. One commentator, @CubbiesFan82, attempted to defend the chant as free speech.

20. Dr. Cole disagreed, "This is NOT free speech. It is inciting a riot. Illegal. Someone should shut his mouth."

21. Another X user, @MagarSydney, responded by mocking Dr. Cole, saying that "[n]o one is afraid of [him]."

22. To this, Dr. Cole again replied that the user should be "very afraid. We are going to hunt you down. We are going to identify you. Then we are going to make you radioactive to polite society. And we will make you both unemployed and unemployable."

23. This conversation is reproduced in the image below:



24. Dr. Cole's statement that those who celebrated the political murder of Charlie Kirk would be found and identified echoed Attorney General Pam Bondi's earlier statement that:"'I've made it clear if you take part in the wave of domestic terrorism against Tesla properties, we will find you, arrest you and put you behind bars," Bondi said. "Let this be a warning you can run but you cannot hide, justice is coming."[1]

---

[1] *'We will find you': Pam Bondi's chilling warning to Tesla 'terrorists',* Sky News (Apr. 1, 2025, 6:52 PM), https://tinyurl.com/2jn7zfbm.

25. Even more recently, in response to threats against Benny Johnson for holding similar views to Mr. Kirk, AG Bondi said, "We are going to catch you if you think you can do something like this," Bondi declared. "We don't care if you're across the country in California, we will find you. We will arrest you, we will extradite you, and we will bring you to justice. We cannot allow this political violence to continue any longer. This arrest will serve as a reminder to many — do not do this. We will find you."[2]

26. Dr. Cole did not know then, and does not know now, if the individuals involved in these social media communications were associated with Florida Atlantic University.

27. On September 14, 2025, FAU received an email from an anonymous iCloud account containing screenshots from a few of Dr. Cole's X posts, the last of which is in the paragraph above. The other posts involved the importance of private gun ownership under the Second Amendment (specifically self-defense after Kirk's murder) and the other involved disbelief at the reaction of those who sat by and witnessed the murder of a young woman on the Charlotte, North Carolina public transit and did nothing to render aid.

28. The next morning, September 15, while on his way to class, Defendant Pennathur sent Dr. Cole a letter via email notifying him that he was "being placed on administrative leave with pay, effective immediately and until you receive further notice from a university official." This letter is attached as Exhibit A. As a result, Dr. Cole was

---

[2] Greg Norman, *Bondi announces arrest of 'coward' who allegedly threatened conservative influencer following Kirk's murder,* FoxNews (Oct. 10, 2025), https://tinyurl.com/m9a2b77h.

not to teach his afternoon class (or any of his classes thereafter) and was barred from returning to campus until further notice.

29. Defendant Pennathur's letter, issued in conjunction with and/or at the direction of Defendants Hasner and Ivy and with approval of Defendants Engle, Neubaum, and Ostinelli, informed Dr. Cole that his suspension was for "your most recent social media posts."

30. The suspension was allegedly pursuant to certain FAU policies, including Regulation 5.012, that required the Provost (Defendant Ivy), prior to imposing any disciplinary action, including suspension, to make certain factual determinations, specially, that Dr. Cole's actions "adversely affects the employee's ability to perform assigned duties, or the University's ability to carry out its mission and purpose."  After eight weeks, FAU still has not provided any evidence to support this determination.

31. Further, Defendants offered no evidence that Dr. Cole's "presence on the job adversely affects university operations," and/or that "the University reasonably believes [that Dr. Cole's presence] might disrupt the efficient functions of the University, and/or jeopardize the safety or welfare of other employees, colleagues, or students" as alleged in Defendant Pennathur's letter. During the investigation conducted into his social media posts, Dr. Cole was not provided with a single incident or even complaint by any administrator, faculty, or student related to Dr. Cole's posts.

32. Further, under Article 17.12(c) of the Collective Bargaining Agreement that applies to Dr. Cole, leave without pay pending investigation is only permissible "[w]hen the Provost or designee has reason to believe that the employee's presence on the job will

9

adversely affect the operation of the University." Under such circumstances, which are not present here, "[t]he leave pending investigation shall commence immediately upon the Provost or designee providing the employee with a written notice of the reasons therefore. The leave shall be with pay, with no reduction of accrued leave."

33. As noted above, the alleged "reasons" were Dr. Cole's "recent social media posts" and none of which would allow Defendant Ivy (Provost) or any other Defendant to reasonably believe Dr. Cole's "presence on the job will adversely affect the operation of the University."

34. In the eight weeks since his suspension, Defendants have provided no facts or analysis to suggest Dr. Cole's X posts violated FAU policy, created a threat to its operations, or threatened the safety of anyone associated with it as alleged in Defendant Pennathur's September 15 letter.

35. None of Dr. Cole's social media posts or any other conduct adversely affected FAU operations, disrupted its efficient functions, or jeopardized the safety or welfare of anyone associated with FAU.

36. On September 26, 2025, Dr. Cole received a letter from attorney Alan Lawson informing Dr. Cole that FAU had hired him to investigate the allegations against Dr. Cole. In his letter, Mr. Lawson informed Dr. Cole that he would remain on leave pending the completion of the investigation. This letter is attached as Exhibit B. The investigation remains ongoing.

37. On October 24, 2025, Dr. Cole, with counsel, met with Mr. Lawson to discuss his social-media posts. Mr. Lawson provided all social media posts Defendants

provided him that were allegedly at issue along with all relevant complaints from anonymous individuals.

38. None of the individuals who complained about Dr. Cole's online speech were associated with FAU as students, faculty or staff.

39. On October 31, 2025, Dr. Cole provided a formal rebuttal to the allegations against him. Dr. Cole's rebuttal is attached as Exhibit C.

40. During his employment, Dr. Cole founded in 2024 and organized and facilitated in 2024 and 2025, the Boca Finance and Real Estate Conference. That conference will be held on FAU's campus on November 13-14, 2025.

41. On November 10, 2025, Dr. Cole received an email from Defendant Pennathur reminding him that he remained on administrative leave and that he was "not permitted to be present on campus or to participate in any university-sponsored events or activities during the period of your leave," including to attend "the Boca Finance and Real Estate" he had organized. This email is attached as Exhibit D.

42. Making matters worse, Defendants—either directly or through an agent—leaked to local news media (WPTV, a local television station) that Dr. Cole had been suspended even though FAU's investigation is ongoing. WPTV announced this during its podcast on September 16, setting off a media frenzy.[3] Dr. Cole had not revealed his

---

[3] Michael Hoffman, *Second FAU professor placed on leave after controversial political posts*, WPTV (Sept. 16, 2025), https://tinyurl.com/4nrcrhrh.

suspension to anyone prior to this broadcast. The next day, Dr. Cole began receiving personal threats to his safety on his personal cell phone.

43. By releasing his confidential personnel information, Defendants put Dr. Cole and his wife in personal danger. Once WPTV published this story, numerous other local media outlets followed up, identifying Dr. Cole as having been suspended by FAU for exercising his First Amendment rights.[4] Then national media outlets picked up on this story, including the Chronicle of Education, and platforms such as Facebook, Instagram and Yahoo, and YouTube.[5] Even Dr. Cole's Wikipedia page was edited to include this information.[6]

44. Dr. Cole is still prohibited from teaching his classes, working with doctoral students on their theses, engaging in faculty duties, attending university sponsored events, and stepping foot on FAU's campus because he exercised his rights to free speech under the U.S. and Florida constitutions.

---

[4] Jasmine Fernández, *FAU places second tenured professor on leave after Charlie Kirk-related social media posts,* The Palm Beach Post (Sept. 17, 2025), https://tinyurl.com/2wdmrpzt; Scott Travis, *How Florida educators' comments about Charlie Kirk are testing free speech rights,* S. Fla. Sun Sentinel (Sept. 27, 2025), https://tinyurl.com/3fxs3wys; Katie Bente, *FAU confirms 3 professors on leave after posts about Charlie Kirk,* KATV ABC7 (Sept. 18, 2025), https://tinyurl.com/jc5pzyun; *id.,* West Palm CW34, https://tinyurl.com/mfnafh5r; *FAU Professor Threatens Students Over Charlie Kirk,* Boca News Now (Sept. 16, 2025), https://tinyurl.com/2e2usd2u; Andrea Torres, *More Florida Atlantic University professors under investigation over posts about Charlie Kirk,* WPLG Local10 (Sept. 20, 2025), https://tinyurl.com/4p7utump; Kirby Wilson, *How Florida officials are cracking down on speech around Charlie Kirk,* Tampa Bay Times (Sept. 20, 2025), https://tinyurl.com/y99vtspz.

[5] *See, e.g.,* Google, https://tinyurl.com/yxjt8hrp (last accessed Nov. 12, 2025) [enter "Rebel Cole" into search bar].

[6] *Rebel A. Cole,* Wikipedia (Oct. 3, 2025), https://en.wikipedia.org/wiki/Rebel_A._Cole.

45. Dr. Cole was not the only member of the FAU faculty to engage on social media regarding the assassination of Charlie Krik. Two other professors with liberal political views critical of Mr. Kirk were suspended for their speech on social media. Defendants targeted Dr. Cole to give Defendants a safe harbor to claim that they also acted against a professor with conservative views. This, of course, is no defense to Defendants' unconstitutional actions.

**COUNT I**
**VIOLATION OF FIRST AMENDMENT TO U.S. CONSTITUTION**
**42 U.S.C. § 1983**
**ALL DEFENDANTS IN OFFICIAL AND INDIVIDUAL CAPACITIES**

46. Dr. Cole incorporates the allegations set out in paragraphs 1 through 45 as if fully set forth herein.

47. Defendants are senior administrators of Florida Atlantic University, a state agency. The actions taken by each Defendant were taken under the color of state law in furtherance of their official duties as representatives of FAU. Defendants' actions were pursuant to official policy and practice of FAU. Accordingly, Defendants' actions are state action for purposes of Section 1983.

48. Defendants' actions unlawfully restrained or abridged Dr. Cole's liberty in personal and political speech in violation of the First Amendment.

49. Defendants' actions, based on FAU official policy, have created and continue to place a substantial burden on Dr. Cole's free-speech rights.

50. Defendants Hasner, Ivy, Engle and Pennathur, are sued in their official capacity and subject to injunctive relief to lift the restrictions on Dr. Cole due to his protected speech and prevent such conduct in the future.

51. All Individual Defendants, in their individual capacities, are liable for money damages for violation of Dr. Cole's First Amendment rights because their conduct violated clearly established law.

52. In authorizing and recommending Dr. Cole's suspension from teaching and working with students, barring him from his academic research and responsibilities, and prohibiting him from stepping foot on campus or attending any university sponsored event, Defendants Hasner, Ivy, Engle, Pennathur, Neubaum, and Ostinelli acted with malice and a goal of harming Dr. Cole for his First Amendment-protected speech.

53. Dr. Cole has suffered injuries to his reputation, free speech rights, and emotional distress because of each Defendants' actions. Dr. Cole was the chairman of budget committee on the Vestry of his Episcopal Parish in Delray Beach. When the first news stories ran, his rector asked for his resignation from the Vestry. Subsequently, he was ostracized by members of his parish. His wife also has suffered grievous emotional distress, including being forced to leave her parish.

## COUNT II
## VIOLATION OF ARTICLE I, SECTION 4 TO FLORIDA CONSTITUTION
## ALL DEFENDANTS IN OFFICIAL AND INDIVDUAL CAPACITIES

54. Dr. Cole incorporates the allegations set out in paragraphs 1 through 53 as if fully set forth herein.

55. Article I, Section 4 of the Florida Constitution provides: "Every person may speak, write and publish sentiments on all subjects but shall be responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech[.]" Fla. Const. art. 1, § 4.

56. "Florida courts consistently have interpreted this provision [Art. 1, § 4] as affording the same protection against infringements on the freedom of speech as does the First Amendment." *Univ. Books & Videos, Inc. v. Metro. Dade Cnty.*, 78 F. Supp. 2d 1327, 1343 (S.D. Fla. 1999); *see also Attwood v. Clemons*, 526 F. Supp. 3d 1152, 1174 (N.D. Fla. 2021).

57. "Freedom of speech is also guaranteed under article I, section 4 of the Florida Constitution. The scope of the protection accorded to freedom of expression in Florida under article I, section 4 is the same as is required under the First Amendment." *See Fla. Canners Ass'n v. State Dep't of Citrus*, 371 So.2d 503 (Fla. 2d DCA 1979). This Court has no authority to limit the constitutional protection and must apply the principles of freedom of expression as announced in the decisions of the Supreme Court of the United States." *Dep't of Educ. v. Lewis*, 416 So. 2d 455, 461 (Fla. 1982).

58. Defendants are senior administrators of FAU, a state agency. The actions taken by each Defendant were taken under the color of state law in furtherance of their

15

official duties as representatives of FAU. Accordingly, Defendants' actions constitute state action for purposes of the Florida Constitution.

59. Defendants' actions unlawfully restrained or abridged Dr. Cole's liberty in personal and political speech in violation of the Florida Constitution.

60. Defendants' actions have created and continue to place a substantial burden on Dr. Cole's free speech rights.

61. Defendants Hasner, Ivy, Engle and Pennathur, are sued in their official capacity and subject to injunctive relief to lift the restrictions on Dr. Cole due to his protected speech.

62. All Individual Defendants are subject to money damages for violation of Dr. Cole's rights under the Florida Constitution because their conduct violated clearly established law.

63. In authorizing and recommending Dr. Cole's suspension from teaching and working with students, barring him from his academic research and responsibilities, and prohibiting him from stepping foot on campus or attending any university sponsored event, Defendants Hasner, Ivy, Engle, Pennathur, Neubaum, and Ostinelli acted with malice and with the intention of harming Dr. Cole for his protected speech.

64. Dr. Cole has suffered injuries to his reputation, free speech rights, and emotional distress as a result of each Defendants' actions.

## PRAYER FOR RELIEF

WHEREFORE, Dr. Cole requests that the Court empanel a jury to decide the issues, enter judgment in his favor, and grant the following relief:

A.   Grant declaratory relief that Defendants' actions violated his rights under the United States and Florida Constitutions to free speech;

B.   Grant injunctive relief against Defendants Hasner, Ivy, Engle, and Pennathur in their official capacities to prevent the ongoing or future violations of Dr. Cole's First Amendment rights and reinstate Dr. Cole's position at FAU;

C.   Award nominal and compensatory damages against Defendants Hasner, Ivy, Engle, Pennathur, Neubaum, and Ostinelli in their individual capacities for harm to Dr. Cole's reputation, emotional distress damages, and exemplary/punitive damages;

D.   Award Dr. Cole attorneys' fees and costs in bringing this action; and

E.   Provide any other relief as deemed appropriate by the Court.

Respectfully submitted this 12th day of November, 2025.

/s/ Edward H. Trent
Edward H. Trent, Fla. Bar No. 0957186
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
etrent@schaerr-jaffe.com

*Attorney for Plaintiff*
*Rebel A. Cole*

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Rebel A. Cole, declare under penalty of perjury that the factual statements in this Verified Complaint are true and correct to the best of my knowledge, information, and belief.

_____  _____
Rebel A. Cole                                        Date  11-13-2025