UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 9:25-CV-81406-DMM

REBEL A. COLE,

    *Plaintiff*,

v.

ADAM HASNER, individually and in his official capacity as President of Florida Atlantic University; RUSS IVY, individually and in his official capacity as Interim Provost of Florida Atlantic University; STEPHEN ENGLE, individually and in his official capacity as Associate Provost, Academic Personnel of Florida Atlantic University; ANITA PENNATHUR, individually and in her official capacity as Chair of the Department of Finance of Florida Atlantic University; DONALD NEUBAUM, individually; and CHEE OSTINELLI, individually,

    *Defendants*.

**PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff Rebel A. Cole moves for a Temporary Restraining Order and Preliminary Injunction enjoining Defendants from enforcing their suspension of Dr. Cole and from prohibiting him from entering Florida Atlantic University ("FAU") property and attending or participating in FAU-sponsored events, including the Boca Finance and Real Estate Conference scheduled for November 13–14, 2025. Dr. Cole not only founded the

conference in 2024 but was instrumental in organizing the conference in 2024 and 2025. **Accordingly, a ruling is requested by 8:00 a.m. Thursday, November 13, 2025, to permit Dr. Cole to attend the conference on FAU's campus. Absent an Order of this Court, he will remain barred from attending the event or any event on FAU's campus.**

## INTRODUCTION

Dr. Rebel A. Cole is the Lynn Eminent Scholar Chaired Professor of Finance in Florida Atlantic University's College of Business. Compl. ¶ 4. On September 15, 2025, he was suspended and barred from campus and all university-sponsored events because of his personal social media posts on matters of public concern. *Id*. ¶ 28 & Ex. A. That action was initiated and approved by Defendants Russ Ivy (Provost), Adam Hasner (President), Stephen Engle (Associate Provost), Anita Pennathur (Chair, Department of Finance), Donald Neubaum (Associate Dean for Faculty and Administration), and Chee Ostinelli (Assist Vice-President, Human Resources). *Id*. ¶¶ 5–10, 47.  On November 10, 2025, Defendant Anita Pennathur emailed Dr. Cole stating he was not permitted on campus or to participate in any university-sponsored events, including the Boca Finance and Real Estate Conference on November 13–14, 2025, which Dr. Cole helped organize. *Id*. ¶ 41 & Ex. D. Defendants claim that Dr. Cole violated various university policies but to date, they have provided no facts showing his personal, non-job-related speech violated any such policy— let alone created disruption to university operations or safety concerns on campus. *Id*. ¶¶ 30–35.

Defendants' actions, taken under the color of state law, penalize and restrict Dr. Cole's constitutionally protected speech. By barring him from campus or attending an event

2

he helped organize as part of his official duties, Defendants continue to unlawfully punish and restrict Dr. Cole's speech. This past Monday, Defendant Pennathur reiterated that Dr. Cole is prohibited from being on campus or attending the conference he helped organize that is due to take place Thursday and Friday, November 13–14, 2025. *Id.* ¶¶ 41, 47–50 & Ex. D. Immediate injunctive relief is necessary to prevent further irreparable First Amendment harm and to allow Dr. Cole to attend and participate in the conference.

## BACKGROUND

Dr. Cole is a tenured faculty member and the Lynn Eminent Scholar Chaired Professor of Finance at FAU. *Id.* ¶ 11. FAU, a state funded and operated university, is in Boca Raton, Florida. *Id.* ¶ 4. This case arises under 42 U.S.C. § 1983 for violations of Dr. Cole's First Amendment rights to free speech and his corresponding rights to free speech enshrined in the Florida Constitution, Art. 1, § 4. *Id.* ¶¶ Counts I & II.

Dr. Cole maintains and uses personal social media accounts, including X, to engage in personal speech on matters of public concern. To make sure his speech is his own and not associated with FAU, Dr. Cole's social media account does not reference his affiliation with FAU. *Id.* ¶ 13. Following the September 10, 2025 assassination of Charlie Kirk and ensuing public debate, Dr. Cole engaged in online discussion addressing the difference between protected expression and incitement and responded to mocking replies. None of the individuals in those exchanges were, to Dr. Cole's knowledge, associated with FAU. *Id.* ¶¶ 20–22, 26.

After FAU received an anonymous email on September 14, 2025, with screenshots of a few of Dr. Cole's posts connected to online debate regarding the Kirk assassination

and another incident of public violence, Defendant Pennathur issued Dr. Cole a September 15, 2025 letter placing him on paid administrative leave "effective immediately and until you receive further notice," citing his "most recent social media posts." *Id*. ¶¶ 27–29 & Ex A. Defendant Pennathur referenced University policies that required the Provost (Defendant Ivy) to make certain findings, although no such findings have ever been shared with Dr. Cole and are not supported by the facts. *Id*. ¶¶ 30–35. Upon information and belief, Defendants Hasner (President of University) and Engle (Associate Provost) approved the suspension and prohibition on Dr. Cole coming on campus or attending any university sponsored events. And Defendants Neubaum (Associate Dean for Faculty and Administration) and Ostinelli (Human Resources) both approved Ivy and Pennathur's discriminatory action. All Defendants are responsible for enforcing the ban on Dr. Cole's speech and continuing their discriminatory action toward him. *Id*. ¶ 29.

In her letter, Dr. Pennathur represents that Dr. Cole's suspension was pursuant to Article 17.12(c) of the UFF Collective Bargaining Agreement ("CBA"), University Regulation 5.012, and University Policy 8.2. In citing these provisions, Dr. Pennathur provides no factual basis to believe Dr. Cole violated any of those regulations or policies. *See id.* ¶¶ 30–32 & Ex. A. As shown below, the few personal social media posts from Dr. Cole provided during Dr. Cole's October 24 investigative interview failed to support any suggestion that those posts "might disrupt the efficient function of the University, and/or jeopardize the safety or welfare of other employees, colleagues, or students." And no facts have been provided to support the assertion—no student, faculty, or administrators have

4

claimed to have been affected by Dr. Cole's off-duty First Amendment protected speech on matters of public concern.

As part of his regular job duties, Dr. Cole founded, organized and facilitated the Boca Finance and Real Estate Conference hosted by the Department of Finance, College of Business. That conference is scheduled for November 13–14, 2025, on FAU's campus. *Id.* ¶ 40. But on November 10, 2025, Defendant Pennathur emailed Dr. Cole, reminding him he is prohibited from coming on campus or attending any university-sponsored events during his suspension, expressly including that conference. *Id.* ¶ 41 & Ex. D. That prohibition on access to campus or university sponsored events is to remain in place pending further notice. To allow Dr. Cole to attend the conference, this Motion was filed.

## ARGUMENT

Dr. Cole's request for injunctive relief meets each of the four factors that "determine[e] the propriety of preliminary injunctive relief: (1) substantial likelihood of success on the merits, (2) irreparable harm, (3) the balance of equities, and (4) the public interest." *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1124 (11th Cir. 2022). Of these factors, likelihood of success on the merits 'is generally the most important.'" *Id.* (quoting *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1271 n.12 (11th Cir. 2020)). The same standard applies to requests for a temporary restraining order. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). In a First Amendment case like this one, the initial "burden of establishing … likelihood of success on the merits … is flipped.'" *Mama Bears of Forsyth Cnty. v. McCall*, 642 F. Supp. 3d 1338, 1349 (N.D. Ga. 2022) (citation omitted); *see also Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004). If the government

5

"fails to show the constitutionality of the law" at issue, then "the plaintiff must be deemed likely to prevail." *Id.*

When the requested injunctive relief is to be granted *ex parte*, the temporary restraining order also requires (A) "specific facts in an affidavit or a verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition;" and (B) a written certification about "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). Here, as set out in the Verified Complaint, Dr. Cole has cooperated with Defendants' "investigation" and still awaits a resolution. After receiving Defendant Pennathur's November 10 email, he contacted the attorney hired by the university for the investigation about this matter but was told that attorney was only hired to do the investigation and nothing more. Notice of this Motion with the Verified Complaint were emailed to Florida Atlantic University's Vice President of Legal Affairs and General Counsel, Joseph S. Van de Bogart, immediately upon the filing of the Motion. Dr. Cole was only notified that he would not be permitted to attend the November 13–14 conference on November 10 and that the reason for his being barred from the event was his protected speech. Thus, immediate relief is necessary, with a hearing to be scheduled to address the lifting of Defendants' punitive action.

### A. Dr. Cole's Claims are Likely to Succeed on the Merits

Dr. Cole's speech was made as a private citizen, in his free time, on a personal account. His posts address matters of public concern, including the rise in political violence, matters of public safety, and social issues of national debate. Compl. ¶¶ 15–25,

6

27. The Defendants' actions—suspension, removal from classes and duties, and a broad campus and event ban—were imposed "for [his] most recent social media posts," and without facts demonstrating job-related disruption or threats to safety.

Dr. Cole explained all of this to the attorney doing the investigation into his actions during his October 24, 2025 interview and again on October 31, 2025, yet Dr. Cole remains suspended and "reminded" he is persona non-grata on campus. *Id.* ¶¶ 37–39 & Ex. C. Not only are such actions retaliatory and unconstitutional prior restraints on speech under the First and Fourteenth Amendments and similar rights under the Florida Constitution, but they are also inconsistent with FAU's own standards, which require factual determinations of adverse operational effects for off duty "job-related" misconduct before doling out discipline. *Id.* ¶¶ 30, 32.

The Supreme Court long ago established that a public university professor's rights of free speech are evaluated under the *Pickering/Connick* standard. This standard provides a three-step framework for analyzing public employee speech claims. The first step is determining whether the employee spoke as a private citizen rather than under official duties per *Garcetti v. Ceballos*, 547 U.S. 410 (2006). Social media posts made on personal accounts outside work hours using personal devices strongly suggest the employee's speech was that of a private citizen. Indeed, one district court in Mississippi found that even though a teacher's comments were about employee pay, that they were publicly posted on Facebook meant they were made as a private citizen. *Gaines v. Jefferson Cnty. Sch. Dist.*, 705 F.Supp.3d 664, 672 (S.D. Miss. 2023).

The second step examines whether the speech addressed a matter of public concern, or what can "fairly [be] considered as relating to any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983). As noted above, Dr. Cole's comments were quintessential First Amendment speech on a matter of public concern—not mere internal or personal grievances. Indeed, he was engaging with other members of the public on topics that were extensively covered in the national press—the tragic assassination of Charlie Kirk on a college campus in Utah, the public reaction to political violence in this country, debates on addressing crime and gun rights, and issues of sexuality and gender. All these topics have received extensive coverage in the legacy media, in the courts, including the United States Supreme Court, and on social media where ordinary citizens gather to discuss, debate, and pontificate on the issues of the day. That these topics are "arguably 'inappropriate or controversial'" in some circles is irrelevant to whether they "deal[] with a matter of public concern." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011).

Having satisfied the first two steps in the *Pickering* analysis, the court must balance Dr. Cole's interest in commenting on public matters against FAU's interest in promoting efficient public services. *Id*. at 568. That balance tips in Dr. Cole's favor. Courts have often held that a professor's social media posts are protected speech that outweighs a university's interest in silencing that speech. *See, e.g.*, *Jones v. Matkin*, 623 F. Supp. 3d 774, 785 (E.D. Tex. 2022) (social media posts criticizing university's pandemic policies). *Cowden v. Bd. of Govs. of Colo. State Univ. Sys. ex rel. Colo. State Univ.-Pueblo*, 622 F. Supp. 3d 1019, 1034–35 (D. Colo. 2022) (social media posts alleging gender discrimination outweighed

university's concerns on impact to working relationships). In such cases, a mere "[a]pprehension of disturbance is not enough to overcome the right to freedom of expression." *Flanagan v. Munger,* 890 F.2d 1557, 1567 (10th Cir. 1989). And here, Defendants cannot even offer an "apprehension of disturbance" involving Dr. Cole's speech, let alone an actual disruption.

Under *Pickering*, the "indispensable predicate to balancing is evidence from the public employer of actual or incipient disruption to the provision of public services." *Jones*, 623 F. Supp. 3d at 785 (quoting *Grogan v. Lange*, 617 F. App'x 288, 291 (5th Cir. 2015)) (cleaned up). If that evidence is lacking "there simply is no countervailing state interest to weigh against the employee's First Amendment rights." *Id.* (quoting *Grogan*, 617 F. App'x at 291 (quoting *Vojvodich v. Lopez*, 48 F.3d 879, 884 (5th Cir. 1995))). Defendants cannot simply assert a potential disruption and expect to overcome Dr. Cole's rights as a citizen to speak on matters of public concern. Here, Defendants have not even attempted to offer actual evidence to support their decision to suspend Dr. Cole for his private speech. The law is clearly established on this point—such actions violate Dr. Cole's First Amendment rights and must be corrected immediately.

Given the absence of evidence of actual or incipient disruption, Defendants cannot meet their burden to overcome Dr. Cole's core First Amendment rights based on apprehension of disturbance or generalized civility norms. Accordingly, Dr. Cole has clearly established a likelihood that he will prevail on the merits of his claims.

### B. Dr. Cole Will Suffer Irreparable Harm Absent Relief

Dr. Cole has been suspended, stripped of his classes and other duties, and barred from campus for over eight weeks, causing irreparable harm and depriving him of his First Amendment freedoms. The Supreme Court and Eleventh Circuit have held that the "loss of [such] freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1271–72 (11th Cir. 2006) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Because of the "intangible nature" of injuries resulting from "chilled free speech," plaintiffs like Dr. Cole cannot "be made whole" by "money damages." *Id.* at 1272. Here, Plaintiff is barred from campus and from attending a two-day conference he organized, which begins November 13, 2025. Without immediate relief, Plaintiff will be excluded from that event and will continue to suffer ongoing deprivation of speech and associational rights and professional harm.

### C. The Balance of Equities and the Public Interest Strongly Favor an Injunction

The balance of equities and the public interest—which merge here because the government is the defendant, *Nken v. Holder*, 556 U.S. 418, 435 (2009)—also strongly support relief. Defendants have no legitimate interest in unconstitutionally retaliating against their employee's speech. Dr. Cole's "[s]peech cannot be … punished or banned[] simply because it might offend a hostile mob." *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 134–35 (1992).

In contrast, the First Amendment freedom that Dr. Cole seeks to protect "serves significant societal interests." *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 776 (1978).

And the "public interest is served when constitutional rights are protected." *Speech First*, 32 F.4th at 1128. Defendants cannot hide behind claims that Dr. Cole's speech offends the university or some members of the public—"'We the People' have accepted as necessary" that "the First Amendment sometimes allows hurtful expression," so that "free-speech interests more generally" may be protected. *Id.* (citation omitted). As the Eleventh Circuit has held, the "First Amendment exists precisely so that speakers with unpopular ideas do not have to lobby the government for permission before they speak." *Otto v. City of Boca Raton*, 981 F.3d 854, 864 (11th Cir. 2020). And it has recognized that "[n]owhere is free speech more important than in … [c]olleges and universities," which "serve as the founts of—and the testing grounds for—new ideas." *Speech First*, 32 F.4th at 1128. A "free society" depends "on free universities." *Id.* at 1128 (quoting *Sweezy v. State of N.H. ex rel. Wyman*, 354 U.S. 234, 262 (1957) (Frankfurter, J., concurring)).

Dr. Cole's speech on matters of public concern here is directly in line with that tradition, and the public's interest lies in protecting such speech. Defendants have identified no facts showing safety risks or operational disruption from Dr. Cole's social media posts, and Dr. Cole faces imminent exclusion from a conference he helped found and organize in retaliation for exercising his First Amendment freedoms. The equities favor restoring the status quo of allowing Dr. Cole to attend and participate in university activities while the litigation proceeds.

## REQUESTED RELIEF

Dr. Cole respectfully requests that the Court:

1. Issue a Temporary Restraining Order enjoining Defendants, their officers, agents, servants, employees, attorneys, and those in active concert or participation with them from enforcing Plaintiff's suspension-based campus and event bans to the extent they prohibit Plaintiff from entering FAU property and attending or participating in FAU-sponsored events, including the Boca Finance and Real Estate Conference on November 13–14, 2025; directing Defendants to permit Plaintiff's attendance and participation in that conference; and prohibiting any retaliatory or adverse action based on his attendance and participation.

2. Set this matter for an expedited hearing and, after hearing, issue a Preliminary Injunction providing the same relief pending final adjudication.

3. Waive or set a nominal bond under Rule 65(c). *See City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. Unit B Feb. 1981) (public-interest litigation represents recognized exception to Rule 65 bond requirement).

4. Grant such other and further relief as is just and proper.

## CERTIFICATION OF ATTEMPT TO GIVE NOTICE

Plaintiff certifies that this motion is brought on an emergency basis due to the imminent November 13–14, 2025 conference and that notice will be provided to Defendants' counsel (FAU's Vice President of Legal Affairs and General Counsel Joseph A. Van de Bogart) promptly upon filing.

## LOCAL RULE 7.1(d)(1) EMERGENCY RELIEF CERTIFICATION AND PROPOSED ORDER

After reviewing the facts and researching applicable legal principles, I certify that this motion in fact presents a true emergency (as opposed to a matter that may need only expedited treatment) and requires an immediate ruling because the Court would not be able to provide meaningful relief to a critical, non-routine issue after the expiration of seven days. I understand that an unwarranted certification may lead to sanctions.

Given the imminent conference dates and that notice of Dr. Cole being barred from attending the conference was only provided three days ago, Dr. Cole requests entry of a Temporary Restraining Order on or before 8 a.m. November 13, 2025, followed by a preliminary-injunction hearing within 14 days. A proposed order is attached.

Respectfully submitted this 12th day of November 2025.

*/s/ Edward H. Trent*
Edward H. Trent, Fla. Bar No. 0957186
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
etrent@schaerr-jaffe.com

*Attorneys for Plaintiff*
*Rebel A. Cole*

## CERTIFICATE OF SERVICE

      I certify that on November 12, 2025, I served the foregoing via email on:

Joseph A. Van de Bogart
generalcounsel@fau.edu, jvandebogart@fau.edu
Vice President of Legal Affairs and General Counsel
Florida Atlantic University
777 Glades Road, ADM,
Boca Raton, FL 33431

*Counsel for Defendants Adam Hasner, Russ Ivy Steven Engle, and Annita Pennathur in their official capacities*

                                              */s/ Edward H. Trent*
                                              Edward H. Trent