IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:25-cv-81406-DMM

REBEL A. COLE,

    *Plaintiff*,

v.

ADAM HASNER, et al.,

    *Defendants*.

_____/

**DEFENDANTS' MOTION TO DISMISS**

**INTRODUCTION**

This is some of what Professor Cole said: "You VILE piece of SHIT! We are going to hunt you down. We are going to identify you. Then we are going to make you radioactive to polite society and then we will make you both unemployed and unemployable." "Be very afraid." He said all this shortly after Charlie Kirk's murder on the campus of another public university when responding to some of Mr. Kirk's critics.







Shortly after Florida Atlantic University became aware of Professor Cole's posts, on September 15, 2025, five days after Mr. Kirk's shooting, it placed Professor Cole on paid administrative leave. Doc.1-1. FAU did so consistent with University Regulation 5.012, University Policy 8.2, and Article 17.12(c) of FAU's Collective Bargaining Agreement with its faculty. *Id.*

FAU also retained former Florida Supreme Court Justice Alan Lawson to conduct an independent investigation of the matter and provide a recommendation to the university. Doc.1 at ¶¶ 36-37; Doc.1-2. With the investigation completed on November 18, 2025, Justice Lawson provided his report to the university concerning Professor Cole (and another faculty member). Doc.12-4. That report recommended Professor Cole's reinstatement based on an assessment of the posts, the complaints received, the professor's prior disciplinary history, and Justice Lawson's interview with the professor. *Id.* at 10-12. That same day, FAU accepted Justice Lawson's recommendation and informed Professor Cole of his reinstatement. Doc.12-5.

This Court should now dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Professor Cole's case is moot. He's been reinstated. His pay was never docked. There's no disciplinary action being taken against him. So, there's nothing for this Court to do in the case. Regardless, Professor Cole has failed to allege facts that make his claims plausible. Any of them. That's especially so for Defendants sued in their individual capacity, where each of those individuals is entitled to qualified immunity.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires "more than an unadorned, the-defendant-harmed-me accusation." *Id.* "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals" or "a formulaic recitation of the elements" of a cause of action fail to make a claim plausible. *Id.*

Although parties are typically limited to the facts provided within the four-corners of a complaint in a motion to dismiss, the incorporation-by-reference doctrine allows for consideration of material referenced in the complaint if the material is "(1) central to the plaintiff's claim[,] and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). "'Undisputed' in this context means that the authenticity of the document is not challenged." *Id.*; *see also Brooks v. Blue*

*Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.").

Relatedly, "[o]n a motion to dismiss, the Court may consider documents attached to the Complaint or directly referred to in the Complaint." *Jordan v. Miami-Dade County*, 439 F. Supp. 2d 1237, 1240 (S.D. Fla. 2006). If the "exhibits attached to a complaint contradict a plaintiff's general and conclusory allegations, the exhibits govern." *Robey v. JPMorgan Chase Bank, N.A.*, 343 F. Supp. 3d 1304, 1312 (S.D. Fla. 2018).

When it comes to jurisdictional arguments, this Court may also consider extrinsic material whose accuracy isn't in dispute. *Sream, Inc. v. PB Grocery, Inc.*, No. 16-CV-81584, 2017 U.S. Dist. LEXIS 29711, at *3 (S.D. Fla. Feb. 28, 2017). "[A] court need not presume the truthfulness of a plaintiff's allegations" related to jurisdiction, either. *Id.* at *8 (citing *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007)).

## ARGUMENT

Considering the tweets, Justice Lawson's report, and FAU's decision to reinstate Professor Cole, this case is moot. Even if it's not moot, with the few facts he alleges, Professor Cole fails to state a claim for relief under the First Amendment (and its state-level analog) where he's been reinstated, and his pay was never docked. There's a case from this Court that says exactly that. And, at a minimum, qualified immunity bars Professor Cole's individual-capacity claims against Defendants Hasner, Ivy, Engle, Pennathur, Neubaum, and Ostinelli.

### I.     PROFESSOR COLE'S CLAIMS ARE MOOT.

"If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." *Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001). Where the subsequent events concern actions taken by the government, including a state university, the courts "are not concerned with [the university]'s motivation." *Beta Upsilon Chi Upsilon Chapter v. Machen*, 586 F.3d 908, 915 (11th Cir. 2009). There's a "rebuttable presumption" that the allegedly improper activity won't happen again. *Id.* at 916. Indeed, "governmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume [the allegedly]

illegal activities." *Coral Springs St. Sys. v. City of Sunrise*, 371 F.3d 1320, 1328-29 (11th Cir. 2004) (citing *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988)).

Professor Cole's complaint centers on him being placed on paid administrative leave and thus being unable to engage with the university community. Doc.1 at ¶¶ 28-32, 44. Though his complaint includes references to harm to "his reputation" and "emotional distress," Doc.1 at ¶¶ 53, 64, as discussed in greater detail below, these conclusory allegations aren't tethered to facts intended to state a plausible claim for damages. Reinstatement is the closest prayer for relief he alleges for supposed violations of his free speech rights, and he's been reinstated. *See Iqbal*, 556 U.S. at 678 (holding that Federal Rule of Civil Procedure 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

Nor is a declaration that he's been wronged enough for this Court to retain jurisdiction. "To have standing to obtain declaratory relief, 'a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'" *Wijesinha v. S. Fla. MGS, LLC*, 387 F. Supp. 3d 1412, 1416 (S.D. Fla. 2019) (quoting *Walden v. CDC & Prevention*, 669 F.3d 1277, 1284 (11th Cir. 2012)). "Injury in the past," the Eleventh Circuit has made clear, "does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1348 (11th Cir. 1999) (citing *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985)). That's because "[a] declaration that these defendants violated [the plaintiff's] rights in the past under the First Amendment" would be "nothing more than a gratuitous comment without any force or effect." *Walden*, 669 F.3d at 1284. In short, Professor's Cole request for a declaration must be tied to some other concrete relief that Professor Cole seeks from the university to remedy a harm. That's not the case here.

To repeat: On November 18, 2025, FAU reinstated Professor Cole. Doc.12-5. This fact isn't in dispute. It goes to a jurisdictional issue—a continuing case or controversy—and so FAU's reinstatement letter can be considered as part of the motion to dismiss. *See Sream, Inc.*, No. 16-CV-81584, 2017 U.S. Dist. LEXIS 29711, at *3. There's also no dispute that Professor Cole was "placed on administrative leave *with pay*." Doc.1-1 (emphasis added). It says so in the letter that he attached together with his complaint, which this Court can consider. *See Jordan*, 439 F. Supp. 2d at 1240. The case is thus moot and should be dismissed. *See Morris v. Roche*, 182 F. Supp. 2d 1260, 1280 (M.D. Ga. 2002) (citing *Musick v. Goodyear Tire & Rubber Co.*, 81 F.3d 136, 138 n.2 (11th Cir. 1996), and *Empresa Ecuatoriana de Aviacion, S.A. v. District Lodge No. 100*, 690 F.2d

838, 846 (11th Cir. 1982), for the proposition that reinstatement of an employee moots any related claims and divests the court of jurisdiction).

## II. PROFESSOR COLE FAILS TO STATE ANY PLAUSIBLE CLAIM.

***A. The applicable First Amendment standards.*** Professor Cole also fails to state a plausible claim under the First Amendment (Count I of his complaint) or Florida's analog to the First Amendment (Count II of his complaint). As Professor Cole recognizes in his complaint, "Florida courts consistently have interpreted [the state's analog to the First Amendment] as affording the same protection against infringements on the freedom of speech as does the First Amendment to the United States Constitution." *Univ. Books & Videos, Inc. v. Metro. Dade County*, 78 F. Supp. 2d 1327, 1343 (S.D. Fla. 1999); *see also* Doc.1 at ¶ 56 (quoting same).

It has long been established that "a public employee's right to freedom of speech is not absolute" even when the employee speaks on his own time. *Bryson v. Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989). And "the State's interest as an employer in regulating the speech of its employees differs significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Labriola v. Miami-Dade County*, 142 F.4th 1305, 1309 (11th Cir. 2025) (quoting *Cook v. Gwinnett Cnty. Sch. Dist.*, 414 F.3d 1313, 1318 (11th Cir. 2005)).

"To accommodate the dueling interests of employee and employer," the Eleventh Circuit applies a four-step test from *Pickering v. Board of Education of Township High School District 205*, 391 U.S. 563 (1968), and *Connick v. Myers*, 461 U.S. 138 (1983). *Labriola*, 142 F.4th at 1309. Under the *Pickering-Connick* test, Professor Cole must prove at trial (and plausibly allege at this stage) that (1) his speech involved a matter of public concern, (2) his speech interests outweighed the university's interest in effective and efficient fulfillment of its institutional responsibilities, and (3) his speech played a substantial part in the adverse employment action. *Id.* If Professor Cole satisfies his burden on these three steps, the burden shifts to FAU to show by a preponderance of the evidence that it would have made the same adverse decision even in the absence of Professor Cole's protected speech. *Id.*

***B. The third Pickering-Connick factor and the lack of an adverse consequence.*** In this case, the first and third factors are undisputed. One works in Professor Cole's favor and the other doesn't. Posts about the murder of a political figure touch on a matter of public concern—a "matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146. But it's also true that the university is neither firing Professor Cole nor disciplining him. There was only an impartial

7

investigation consistent with the university's regulations, policies, and collective bargaining agreement. No pay was docked. No training mandated. Not even a letter of reprimand. Because there's been no adverse employment action, this third factor should be the end of the inquiry consistent with this Court's decision in *Lucas v. City of Delray Beach*, 692 F. Supp. 3d 1271, 1287-88 (S.D. Fla. 2023).

*Lucas* is indeed dispositive. There, as here, a government employer placed an employee on paid administrative leave following a social media post and pending an investigation. *Id.* at 1279-81. There, as here, the employee was on administrative leave for about two months. *Id.* at 1288. There, as here, the employee continued to receive her full salary and benefits during the investigation. *Id.* at 1281. There, as here, the employee was neither terminated nor demoted after the investigation. *Id.* And there, as here, the employee brought a claim "for Violation of her First Amendment Right to Free Speech." *Id.* at 1283. And there this Court dismissed the claim, holding that a two-month paid administrative leave was not an adverse employment action. *Id.* at 1287-88.

This Court explained that the employee's "paid administrative leave" "[wa]s virtually indistinguishable from the kinds of leave the Eleventh Circuit has found insufficient to constitute an adverse action." *Id.* at 1288. That's because the employee "retained all of her pay and benefits" and "was allowed to return to work with her full salary and benefits intact." *Id.* The paid leave was meant to give time to *investigate* facts and not *punish* the employee as a precursor to termination. *Compare Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 917-18 (11th Cir. 1993) (finding suspension punitive where it preceded termination), *with Bell v. Sheriff of Broward Cnty.*, 6 F.4th 1374, 1378 (11th Cir. 2021) ("[W]e need only consider whether the suspension with pay from law-enforcement activities constituted an adverse action. Like the district court, our answer is no.").

The only meaningful factual difference between *Lucas* and this case cuts against Professor Cole. The employee in *Lucas* received a written reprimand following her investigation. 692 F. Supp. 3d at 1281. That didn't happen here. Under the circumstances, as the allegations and material properly considered with them make clear, there's no plausible First Amendment claim. *Id.*; *see also Moore v. Miami-Dade County*, No. 03-22421-CIV-GOLD/SIMONTON, 2005 U.S. Dist. LEXIS 27245, at *29 (S.D. Fla. Sept. 30, 2005) (magistrate judge consent case) (concluding that "as Plaintiffs have not shown that being placed on administrative leave with pay for one month qualifies as an adverse employment action, they have not made out a *prima facie* case of [First Amendment] retaliation"); *Palmer v. Potter*, No. 1:08-CV-3876-CAM-AJB, 2010 U.S. Dist.

8

LEXIS 149100, at *108 (N.D. Ga. Jan. 12, 2010) (concluding that "the paid off-duty status in this case was not an adverse employment action"), *recommendation adopted* No. 1:08-CV-3876-CAM-AJB, 2010 U.S. Dist. LEXIS 149114 (N.D. Ga. Mar. 24, 2010); *Norris v. Opelika City Bd. of Educ.*, No. 3:18-CV-1057-RAH, 2020 U.S. Dist. LEXIS 215741, at *19 (M.D. Ala. Nov. 18, 2020) ("The Court agrees with the OCBOE that Norris's removal from the classroom without any reduction in pay or benefits and the threats to her master's degree do not constitute actionable adverse employment actions under the facts in this case or under governing Eleventh Circuit precedent."); *cf. Carrio v. Apollo Grp.*, No. 1:07-CV-1814-BBM, 2009 U.S. Dist. LEXIS 69026, at *8 (N.D. Ga. Aug. 7, 2009) (applying the *Burlington Northern* test in a case involving a private university, adopting the recommendation that the paid administrative leave pending an investigation was not an adverse employment action).

That said, Professor Cole may claim that his general references to reputational harm and emotional distress make his claims plausible. Doc.1 at ¶¶ 53, 64. Not so. These allegations are not specific enough to make out a claim for relief. Federal Rule of Civil Procedure 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. If "having her badge and gun taken away from her in front of her children" and "having to undergo a psychiatric exam before she could return to work" failed to provide enough facts for a First Amendment claim, *Lucas*, 692 F. Supp. 3d at 1288, then neither do general references to reputational harm and emotional distress, *see id.*

The sprinkling of *comparatively* more specific allegations in the complaint also rings hollow. Professor Cole claims that he was asked to resign from his parish's vestry, and that he and his wife were ostracized by members of their parish. Doc.1 at ¶ 53. Though he never alleges whether his church shunned him because of the investigation or the content of his tweets, it doesn't matter in the end. This Court has rejected "the proposition that a public employer's *non-adverse* action can become *adverse* solely because of the independent actions of a third party." *Lucas*, 692 F. Supp. 3d at 1295. Here, as in *Lucas*, the employer "did nothing wrong" in conducting an investigation; it "paused [Professor Cole's] official duties during an investigation into h[is] conduct—all without touching h[is] pay, h[is] rank, or h[is] benefits." *Id.* "On these facts," FAU should not be held "accountable for the independent actions of an unaffiliated third party." *Id.*

This Court has recognized "our Circuit's well-settled view that a 'paid suspension' is a 'useful tool for an employer to hit "pause" and investigate when an employee has been accused of

9

wrongdoing.'" *Id.* at 1287 (quoting *Davis v. Legal Servs. Ala., Inc.*, 19 F.4th 1261, 1267 (11th Cir. 2021)). On these facts, there's no First Amendment claim because Professor Cole has failed to allege—and cannot allege—enough facts for purposes of *Pickering-Connick*'s third factor.

   ***C. The second Pickering-Connick factor favors FAU's interests.*** The second factor in the *Pickering-Connick* test is also lacking. It requires Professor Cole to plausibly allege that his speech interests outweighed FAU's interest in effective and efficient fulfillment of its institutional responsibilities. *Labriola*, 142 F.4th at 1309. This factor turns on an assessment of several subfactors: whether the posts impeded the university's efficient performance of its mission and function; the time, place, and manner of the posts; and the context within which the speech was made. *Id.*

   As a threshold matter, Professor Cole fails to include all of his tweets that triggered the complaints referenced in his complaint, Doc.1 at ¶¶ 13-23, 27, the investigation referenced in his complaint, Doc.1 at ¶¶ 36-37, and the paid administrative leave referenced in his complaint, Doc.1 at ¶¶ 28, 36-37. FAU provides those above. Consideration of *all* the tweets reproduced above is appropriate. The tweets' "contents are alleged in [the] complaint," though selectively edited. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). The contents are "integral to the allegations," *Daewoo Motor Am. v. GMC*, 459 F.3d 1249, 1266 n.11 (11th Cir. 2006), because there's no dispute that Professor Cole's tweets triggered the chain of events at issue; the tweets are "a necessary part of [Professor Cole's own] effort to make out a claim," *Day*, 400 F.3d at 1276. And the contents aren't in dispute; this is what Professor Cole said on his publicly available account for all to see. *Id.*; *see also* Doc.1 at ¶ 23 (reproducing one post with Professor Cole saying the following: "Be very afraid. We are going to hunt you down.").

   Next, with all the tweets properly considered, the subfactors.

   The first concerns government efficiency. It tilts in favor of government action where there *may* be an "impair[ment] [of] discipline," "detrimental impact on close working relationships for which personal loyalty and confidence are necessary," or an adverse effect on "the performance of the speaker's duties or interfere[nce] with the regular operation of the enterprise." *Labriola*, 142 F.4th at 1310. Disruptions count. But "[t]he government's legitimate interest in avoiding disruption does not require proof of actual disruption." *Moss v. City of Pembroke Pines*, 782 F.3d 613, 622 (11th Cir. 2015). "Reasonable possibility of adverse harm is all that is required." *Id.* Calling someone a "VILE piece of SHIT!" or threatening to "hunt down" others surely creates the

10

possibility of disruption and interference with FAU's work as a public university. Professor Cole can't allege otherwise. *Cf.* Doc.1-1 (FAU informing Professor Cole that it had "received complaints which [gave it] reason to believe that [his] continued presence on the job *adversely affects university operations*," and that "the University reasonably believes [the social media posts] *might disrupt the efficient functioning of the University*" (emphasis added)).

The time-place-and-manner subfactor also favors FAU. True, Professor Cole posted on X on his own time and away from work, just as the plaintiff in *Labriola*. 142 F.4th at 1310-11. But, like the plaintiff in *Labriola*, the *manner* in which Professor Cole chose to express himself was "demeaning, rude, and insulting." *Id.* at 1311. Again, he can't allege otherwise.

Context is important, too. "Precedent in both the Supreme Court and [the Eleventh Circuit] has emphasized that the state possesses a greater interest in controlling employee speech when it occurs in public, rather than private." *Id.* Like the plaintiff in *Labriola*, Professor Cole used a public, online forum to express himself. *Id.* He tweeted. He didn't put his views in private correspondence or express them in a private conversation. Professor Cole can't allege otherwise.

Taken together, this means that *when* the university decided to put Professor Cole on paid administrative leave, it had ample grounds to do so. Professor Cole can't allege that the decision was in error when it was taken. To the extent he thinks that FAU should have waited to see whether he truly intended to "hunt down" those with whom he disagreed, that wasn't an option.

**D. A threat assessment of Professor Cole's tweets.** Indeed, *when* he posted his views, FAU had an obligation to assess whether Professor Cole's words were threats. "True threats of violence, everyone agrees, lie outside the bounds of the First Amendment's protection." *Counterman v. Colorado*, 600 U.S. 66, 72 (2023). "The First Amendment does not protect 'true threats,' which are 'statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.'" *Watkins v. Cent. Broward Reg'l Park*, 799 F. App'x 659, 667 (11th Cir. 2020) (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)). While "[t]he context in which the words were spoken should be taken into consideration" when determining whether a statement is a threat, *United States v. Pinkston*, 338 F. App'x 801, 802 (11th Cir. 2009), "[t]he speaker need not actually intend to carry out the threat," *Black*, 538 U.S. at 359-60; *see also United States v. Abbott*, No. 24-CR-20098-BLOOM/Elfenbein, 2025 U.S. Dist. LEXIS 119424, at *7-8 (S.D. Fla. June 24, 2025) ("[I]t is well established that the First Amendment permits laws that ban 'true threats,' which 'encompass those statements where

11

the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals' even if the speaker does 'not actually intend to carry out the threat.'" (quoting *Black*, 538 U.S. at 359-60)).

Consider the Eleventh Circuit's recent stay order in *Damsky v. Summerlin*, No. 25-14171, 2026 U.S. App. LEXIS 623 (11th Cir. Jan. 8, 2026). There, the court found that posts by a student, Damsky, "are likely not protected speech" because "they promoted extralegal violence," *id.* at *10, regardless of whether the "posts constituted true threats," *id.* at *6. Specifically, according to the Eleventh Circuit, the key was that "the [university] community could reasonably interpret Damsky's posts as promoting extralegal violence, and schools can regulate at least some speech that calls for illegal conduct." *Id.* And "[t]he fact that Damsky's speech occurred online instead of on campus" did not make the speech protected. *Id.* at *11.

Here, again, is what Professor Cole said on the heels of a murder on another public university campus when tensions were high: "Be very afraid." *Supra*. "We are going to hunt you down." *Id.* "We are going to identify you." *Id.* "Then we are going to make you radioactive to polite society." *Id.* "And we will make you both unemployed and unemployable." *Id.* In response to yet another online user, Professor Cole wrote: "We are going to hunt you down." *Supra*. "Then we are going to make you radioactive to polite society." *Id.* "And then we will make you both unemployed and unemployable." *Id.* Shortly after hearing of these complaints, FAU kept Professor Cole from campus, Doc.1-1, until after it completed an investigation, Docs.12-4, 12-5. That was the responsible thing to do. Professor Cole can't allege otherwise. *Cf. Damsky*, 2026 U.S. App. LEXIS 623, at *8 ("We can look to relevant context and prior events" "to determine how members of the UF community would reasonably interpret Damsky's posts.").

***E. Professor Cole's claims against Defendants in their individual capacity.*** Nor are the individual-capacity allegations against Defendants Hasner, Ivy, Engle, Pennathur, Neubaum, and Ostinelli sufficient to state a claim. True, Professor Cole includes the legal conclusion that Defendants "violated clearly established law." Doc.1 at ¶¶ 51, 62. But legal conclusions aren't enough to get past the pleading standards or qualified immunity. *See Iqbal*, 556 U.S. at 678.

"Qualified immunity shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the challenged action." *Fuller v. Marrero*, No. 23-24251-CIV, 2024 U.S. Dist. LEXIS 164300, at *6 (S.D. Fla. Sept. 11, 2024) (quoting *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019)). The

12

protection applies to officials in administrative roles at public universities. *See, e.g., Williams v. Ala. State Univ.*, 102 F.3d 1179 (11th Cir. 1997). And "[i]n determining whether the constitutional right at issue was 'clearly established' at the time the officer acted, we ask whether the contours of the right were sufficiently clear that every reasonable officer would have understood that what he was doing violates that right." *Prosper v. Martin*, 989 F.3d 1242, 1251 (11th Cir. 2021). Bare allegations of malice are not enough. *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982). The Eleventh Circuit has established that a plaintiff can meet his burden of showing that the constitutional right at issue was "clearly established" in any of three ways:

> He can either (1) come forward with "case law with indistinguishable facts clearly establishing the constitutional right," (2) point to "a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right," or (3) show that officials engaged in "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law."

*Jarrard v. Sheriff of Polk Cnty.*, 115 F.4th 1306, 1323-4 (11th Cir. 2024) (quoting *Prosper*, 989 F.3d at 1251).

There are no allegations that establish the clear violation of a constitutional right. Professor Cole makes no reference to a materially similar case (though *Lucas* is a materially similar case that cuts strongly against him). As discussed above, there's no broad, clearly established principle from the multi-part *Pickering-Connick* test that the university officials violated. Finally, Professor Cole has failed to plead facts that plausibly establish "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Id.*

What the complaint alleges is threadbare legal conclusions. That's it.

The damages allegations make the lack of factual allegations even more apparent. The Eleventh Circuit "require[s] that compensatory damages in a § 1983 suit be based on *actual* injury *caused by the defendant* rather than on the 'abstract value' of the constitutional rights that may have been violated." *Slicker v. Jackson*, 215 F.3d 1225, 1230 (11th Cir. 2000) (emphasis added). Professor Cole never alleges that he suffered an *actual* injury *caused by* Defendants Hasner, Ivy, Engle, Pennathur, Neubaum, or Ostinelli. His unadorned allegations of injury concern his "First Amendment rights," "free speech rights," and "rights under the Florida Constitution." Doc.1 at ¶¶ 51-53, 62-64. That's not enough. *Slicker*, 215 F.3d at 1230. Nor are allegations of injury to his "reputation" and "emotional distress" from being "ostracized by members of his parish." Doc.1 at ¶¶ 53, 64. For example, Professor Cole never connects the dots to allege why being placed on paid

13

administrative leave caused his fellow parishioners to "ostracize" him when the content of his speech on a public forum could have easily done the same.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the complaint under Rules 12(b)(1) and 12(b)(6).

Dated: January 10, 2026

Respectfully submitted by:

/s/ Mohammad O. Jazil
Mohammad O. Jazil (FBN 72556)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 S. Monroe St. Suite 500
Tallahassee, FL 32301
(850) 270-5938
mjazil@holtzmanvogel.com
zbennington@holtzmanvogel.com

*Counsel for Defendants*

## LOCAL RULE 7.1(C) CERTIFICATION

The undersigned certifies that this motion does not exceed twenty pages inclusive of all parts.

/s/ Mohammad O. Jazil
Mohammad O. Jazil

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2026, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

/s/ Mohammad O. Jazil
Mohammad O. Jazil